DUVICK, Respondent, v. INDUSTRIAL COMMISSION and another, Appellants.

*November 29—December 20, 1963.*

For the appellant Industrial Commission the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

For the appellant Threshermen's Mutual Insurance Company there was a brief by *Schlotthauer, Jenswold, Reed & Studt* and *Robert R. Studt,* all of Madison, and oral argument by *Robert R. Studt* and *George McD. Schlotthauer.*

For the respondent there was a brief and oral argument by *John G. Nestingen* of Woodville.

BROWN, C. J. Orbeck Bros., Inc., is a Wisconsin corporation organized to conduct a tavern business. Two hundred fifty shares of stock were authorized by the corporation's articles. One hundred twenty-eight shares were issued. One share each was issued to the corporation's officers, who were George Price, president, Hazel Seeman, vice-president, and Leonard Kado, secretary. These three persons constituted the board of directors and they remained the officers and

directors at all times referred to herein. The remaining 125 shares issued were held by Alex Jacenko.

On August 20, 1958, Alex Jacenko and Martha Jacenko sold their entire interest in "the business known as Orbeck Bros., Inc.," and their interest in all the corporation stock certificates to Arthur W. Duvick, Orel A. Duvick, and Louis Tschann. On the same day Jacenko's 125 shares were transferred and reissued to Arthur Duvick. Forty shares which till then had not been issued to anyone, were issued to Louis Tschann but were canceled thereafter. Reports made by the corporation to the secretary of state showed only 128 shares outstanding in March, 1958, and March, 1959. Price, Seeman, and Kado continued to be holders of one share each and at all times continued to be officers and directors.

Tschann appears to be a friend of Duvick's who accompanied him to Wisconsin to assist in the operation of the tavern. Both Duvick and Tschann were formerly residents of Minneapolis.

Both before and after the purchase and sale referred to, Orbeck Bros., Inc., was licensed to sell intoxicating liquor. It had complied with sec. 176.05 (13), Stats., and had appointed Alex Jacenko its liquor-license agent.

On August 20, 1958, a meeting of the stockholders of Orbeck Bros., Inc., was held. All stockholders were present and unanimously adopted a resolution making Arthur Duvick liquor-license agent in place of Alex Jacenko, vesting him with the powers and responsibilities demanded of the agent by sec. 176.05 (13), Stats.:

"*Licenses to corporations; appointment of agents.* No corporation organized under the laws of this state or of any other state or foreign country, shall be given a license to sell in any manner any intoxicating liquor unless such corporation shall have first appointed, in such manner as the commissioner of taxation shall by regulation prescribe, as agent, a citizen of the United States and shall have vested in him by properly authorized and executed written delegation full

authority and control of the premises, described in the license of such corporation, and of the conduct of all business therein relative to intoxicating liquors as the licensee itself could in any way have and exercise if it were a natural person resident in the state, nor unless such agent is, with respect to his character, record and reputation, satisfactory to the commissioner. . . ."

Duvick consented to the appointment and the beverage division of the department of taxation approved it. Duvick began work in the tavern at once. At the hearing he described his activities as tending bar, hiring part-time help, seeing to it that the place was clean. (Summarizing) "I am more of a manager, . . . I was running the business for the Orbeck Corporation who were the stockholders. . . . Mr. Tschann and myself decided how much money would be drawn from the operation of the tavern. We fixed our own hours of work. We outlined the duties which we were to perform. We were responsible to no one except ourselves in the performance of those duties. No one could discharge me other than myself. I was subject to no one's direction but my own. In May or June of 1959 I left Spring Valley [site of the tavern] and returned to Minneapolis and left Tschann behind."

It does not appear that the records of the beverage division of the department of taxation were called to Judge WILKIE's attention, but we take judicial notice of the records of the beverage division and observe that on June 17, 1959, the corporation appointed Louis Tschann its liquor-license agent for Orbeck Bros., Inc. Tschann accepted the appointment on the same day and it was approved by the beverage division July 13, 1959. The division's record notes that Louis Tschann succeeded Arthur Duvick.

After an absence, the duration of which does not appear, Duvick came back to the tavern where, on November 13, 1959, he injured his back while stacking beer cases. The

testimony in the Industrial Commission hearing tells us nothing about the terms or the circumstances of Duvick's resumption of activity in the tavern. It is clear only that he was then not liquor-license agent for the corporation and thereby charged with an agent's duties.

The corporation withheld social-security taxes on Duvick in 1958 and 1959 and paid those taxes.

The learned circuit judge determined that the corporate resolution naming Duvick the liquor-license agent with duties prescribed for the agent by sec. 176.05 (13), Stats., particularly the " '. . . full authority and control of the premises . . . and of the conduct of all business therein relative to intoxicating liquors . . .' " and " 'fermented malt beverages' " was an express " 'contract of hire.' "

The question in these appeals is whether the commission's finding can be reversed as a matter of law.

We do not quarrel with Judge WILKIE's view that the appointment to and acceptance of the position of liquor-license agent constituted a contract of employment between Duvick and the corporation. But when Duvick was supplanted in that position in June, 1959, that contract and his status dependent on it was terminated. Tschann succeeded to the agent's duties, authority, and status as an employee as a result of now being agent. Duvick, as he testified, returned to Minneapolis. There is nothing in the record upon which to base any contract of employment under which Duvick started work again in the tavern.

In what capacity then, did Duvick return to work in the tavern? The record does not tell us that the corporation or any of its officers asked him to come back. Apparently, he just walked in as of right as the sole stockholder and took over without permission or hindrance in running what he and everyone else considered to be essentially his own property. The inference is permissible and is supported by Duvick's representations in connection with a family insurance

policy. He applied for the policy November 24, 1958, and in the application to the question "Employed by?" he answered "Self." On October 2, 1959, he claimed benefits under the policy when his small son was hurt and to the question in the claim "Occupation" he answered "Tavern Owner," and to the question "Name and Address of Employer" he answered "Self employed." Over his signature he warranted the above statements to be true and correct.

The fundamental purpose of the Workmen's Compensation Act, ch. 102, Stats., is to provide compensation to an employee accidentally injured. *Independence Indemnity Co. v. Industrial Comm.* (1932), 209 Wis. 109, 112, 244 N. W. 566. The act defines an employee under sec. 102.07, Stats., which provides, in part:

"EMPLOYE DEFINED. 'Employe' as used in this chapter means:
" . . .
"(4) Every person in the service of another under any contract of hire, express or implied, . . ."

The relationship of employer to employee is essential. If the employer is also the employee no such relationship exists, and recovery is not permitted under the act. *Fritz v. Industrial Comm.* (1935), 218 Wis. 176, 178, 260 N. W. 459; *Leigh Aitchison, Inc., v. Industrial Comm.* (1925), 188 Wis. 218, 205 N. W. 806. The act is not intended to be an accident or health-insurance measure. *Independence Indemnity Co. v. Industrial Comm., supra,* at page 114.

A corporation is an artificial person existing in the contemplation of the law and qualifies as an employer. In certain circumstances the corporation, although still a corporate entity, and the alleged employee may for the purposes of the act be one and the same. In that case the employer-to-employee relationship does not exist. *Fritz v. Industrial Comm., supra; Leigh Aitchison, Inc., v. Industrial Comm., supra.*

There is no conclusive test as to when the relationship does not exist, but the general principle is that when a person owns practically all of the stock of the corporation and has complete authority over his own employment, he does not sustain the relation of employee to the corporation. *Leigh Aitchison, Inc., v. Industrial Comm., supra.*

There is no evidence of any current contract or agreement of employment between Duvick and Orbeck Bros., Inc., existing on November 13, 1959, the date of the accident. His presence on the tavern premises does not necessarily imply that he was there as an employee; he could quite as well be there as a principal stockholder looking after his investment. At about that date he stated (and warranted) that he owned the tavern and was self-employed. Duvick, as applicant, has the burden of proving that he was an employee of the corporation and was not self-employed.

When Duvick commenced to conduct the tavern business, his family moved to the living quarters directly above the tavern. He ran the tavern mostly by himself, but occasionally hired part-time help. He prescribed his own duties and fixed his hours of employment. He set his own salary and decided how much money he was to draw from the operation of the business as pay. He testified that he was responsible to no one but himself, and no one had any authority over him.

The ultimate determination of employer-employee relationship under the act is a question of law. *Harry Crow & Son, Inc., v. Industrial Comm.* (1963), 18 Wis. (2d) 436, 440, 118 N. W. (2d) 841. In *Leigh Aitchison, Inc., v. Industrial Comm., supra,* we held that owning practically all of the stock of the corporation and having complete authority over one's own employment does not sustain the relationship of employee to a corporation. Whether these two elements exist is a fact question to be determined by the commission.

In the present case, reasonable inferences can be drawn in favor of the existence of these two elements. Certain facts

are disputed, and from other facts inferences can be drawn that a contract of employment did not exist. Although existence of the employer-to-employee relationship is a question of law:

". . . there are questions of fact for the commission where there is room for dispute either as to facts or as to the inferences to be drawn from the facts." *Harry Crow & Son, Inc., v. Industrial Comm., supra,* page 440.

Findings that Duvick owned practically all of the issued stock and had complete authority over his employment are supported by the record. Findings of fact of the commission supported by credible evidence and reasonable inferences are conclusive. Sec. 102.23 (1), Stats. Therefore, the findings and order of the commission must be sustained, and the judgment of the circuit court that a contract of employment between the corporation and Duvick existed as a matter of law must be reversed.

*By the Court.*—Judgment reversed. Cause remanded with directions to reinstate the order of the Industrial Commission.

WILKIE, J., took no part.

FAIRCHILD, J. (*dissenting*). I would affirm, although doing so would require that we overrule *Leigh Aitchison, Inc., v. Industrial Comm.* (1925), 188 Wis. 218, 205 N. W. 806. If there are to be situations where a majority stockholder, active in carrying on the business of the corporation, is not to be deemed an employee for the purpose of the Workmen's Compensation Act, it seems to me that such situations ought to be defined in advance by statute or administrative rules. Under our present ruling, the question of whether the corporate entity is to be disregarded is treated as an issue of fact and left to case-by-case decision.

DIETERICH, J., also dissents.