Tate, Plaintiff and Respondent, v. Industrial Commission, Defendant and Appellant: Briggs & Stratton Corporation, Defendant.

*February 5—March 3, 1964.*

4

For the appellant Industrial Commission there was a brief by *Arnold J. Spencer,* chief counsel of the unemployment compensation division, and *Max J. Peltin,* and oral argument by *Mr. Spencer.*

For the respondent there was a brief and oral argument by *Harvey L. McCormick* of Milwaukee.

FAIRCHILD, J. 1. *Support for finding of voluntary termination.* If an employee absents himself from work, but does not intend to terminate the employment relationship, his failure to notify his employer of the reason and probable duration of his absence, might, under some circumstances, constitute misconduct connected with his employment so that if the employer discharges him therefor, the employee

would be ineligible for unemployment compensation benefits accrued with respect to that employing unit.[1] In order for such misconduct to exist, there must be an intentional and substantial disregard of the employer's interests or the employee's duties. We recently upheld a commission determination that a prolonged absence and a failure to notify the employer except on several days near the beginning of the period was not, under the circumstances, misconduct under the statute.[2] The employer takes the position in the instant case that there was a voluntary termination of employment by the employee, not a discharge.

If an employee absents himself from work, and does intend to terminate the employment relationship, he is ineligible for benefits based on such employment unless he quit with good cause attributable to the employing unit, for compelling personal reasons, or to take another job.[3] The type of intent which accompanies his absence is an issue of fact. Not all people who intend to quit give notice of such intention. An employer's rule requiring the employee to give notice concerning absence, a contract provision that absence without notice shall be deemed termination of employment, the employee's failure to give notice, the apparent lack of a valid reason for absence, and the ordinary practice of that employer with respect to unexcused absence are circumstances properly to be considered, along with others, in determining whether the employee intended to quit or was merely absenting himself temporarily, with an intention to return.[4] For a series of cases illustrating treatment of ab-

---

[1] Sec. 108.04 (5), Stats.

[2] *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. (2d) 502, 126 N. W. (2d) 6.

[3] Sec. 108.04 (7), Stats.

[4] See *Milwaukee Transformer Co. v. Industrial Comm., supra,* footnote 2.

sence from work at times as misconduct and at times as voluntary termination, see Anno. 41 A. L. R. (2d) 1158.

This court has said that an employee's intention to quit may be shown by word or manner of action or by conduct inconsistent with the continuation of the employee-employer relationship.[5]

The examiner who sat as the appeal tribunal evidently accepted the employer's records as reliable and disbelieved Tate's claim that he, on October 5th and 6th, and his landlady, on October 9th, telephoned the employer to explain his absence, and disbelieved Tate's claim that he was absent because of illness on those days. Tate personally called for his check on Tuesday, October 10th, the ordinary payday for the preceding pay period, but said nothing then or later to indicate that he considered himself employed. The examiner considered the provision of the collective-bargaining agreement, that, "An employee will cease to have seniority and continuity of employment if he is absent for three consecutive working days without notifying the company, unless there is satisfactory reason for failure to so notify." The employer treated Tate as having quit, and not as a discharged employee. We conclude that the examiner's finding of a voluntary termination is supported by the evidence and reasonable inferences therefrom.

2. *The hearing.* The circuit court concluded that Tate did not receive a fair and complete hearing.

Mr. Tate was not represented by counsel at the hearing. He was, however, represented by counsel at the time he petitioned the commission for review. He then asserted that the notice of hearing was insufficient to allow him to obtain counsel and adequately prepare for the hearing.

Mr. Tate made his request for a hearing on November 13, 1961. On November 27th, the commission acknowl-

[5] *Dentici v. Industrial Comm.* (1953), 264 Wis. 181, 186, 58 N. W. (2d) 717.

edged his request by a printed form. This document told him that the hearing would be scheduled in the near future and he would be notified several days in advance; that he could be represented by an attorney or present his own case; that he must arrange for the appearance of his own witnesses, but that if a necessary witness refuses to appear, a subpoena should be obtained from the local employment office and served on the witness before the hearing.

Notice was given December 22, 1961, that the hearing would be held December 28th and that necessary witnesses should be informed and definite arrangements made for their attendance.

During the hearing Tate testified that he telephoned his employer on October 5th and 6th, and that his landlady telephoned October 9th. The employer maintained a record of messages of this type from employees, but the record showed no calls from Tate or his landlady on those days. In response to a question by the examiner, Tate testified he had talked to his landlady two days before the hearing about attending it, but the landlady was unable to come on the date which had been set.

We do not consider the period between notice and hearing so short that, in substance, the commission has made a decision without holding a hearing. Although the examiner might have adjourned the hearing, on his own initiative, and in his discretion, in order to permit the landlady to be subpoenaed, we do not consider that his failure to do so vitiated the hearing.

The learned circuit judge was of the opinion that certain questions put by the examiner to Tate showed that the examiner "seems to have prejudged the case—at least as to credibility—long before it was over." Evidently the examiner did form a low estimate of Mr. Tate's credibility, but the record does not establish that he formed that estimate

otherwise than by listening to him and observing him during his testimony.

We have said with respect to a similar argument concerning a court which was hearing a case as trier of fact:

"In a trial to the court it is the court which has the duty of determining the veracity of witnesses, the weight to be given to the evidence of such witnesses, and the inferences to be drawn. The court's conclusion that Wyrembek's testimony had little or no persuasive effect was well founded and the court's manifest skepticism regarding it does not constitute error nor call for a new trial because the expression of this disbelief was not postponed until the conclusion of the trial." [6]

Although we are not convinced that the hearing was unfair, we note two instances where we must voice our disapproval of questions asked by the examiner. There was testimony that Tate had been garnisheed and had been picked up at work by a deputy sheriff in some matter concerning his wife, from whom he had been separated. The examiner later asked the amounts he paid out of every check to support his wife, and the amounts paid on overdue bills. These questions and answers followed:

"*Q.* Now, when you saw you were paying out so much of your wages for delinquent overdue bills and for your wife, you decided to quit; isn't that right? *A.* That isn't true.

"*Q.* You figured it wasn't worth your while to keep on working if you were having to pay out all your wages? *A.* No, that isn't true."

At another point, Tate testified his landlady, Mary Brooks, had telephoned the employer for him. The examiner asked: "Is she your girl friend, too."

Although an examiner may find it necessary, in order to develop the truth, particularly where the parties are not

---

[6] *Ace Associates v. Nagy* (1961), 13 Wis. (2d) 612, 618, 109 N. W. (2d) 359.

represented by counsel, to employ the arts of cross-examination, we consider that in these two instances, he exceeded proper bounds for a quasi-judicial officer.

*By the Court.*—Judgment reversed, cause remanded with directions to confirm the decision of the Industrial Commission.

GORDON, J., took no part.