MARLIN ELECTRIC COMPANY and another, Appellants, v. INDUSTRIAL COMMISSION and others, Respondents.

*January 10—January 31, 1967.*

For the appellants there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Edmund W. Powell.*

For the respondent Industrial Commission the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent Catherine Moloney there was a brief by *Charles J. O'Laughlin* and *Raymond, Mayer, Jenner & Block*, all of Chicago, Illinois, and oral argument by *Mr. O'Laughlin.*

HANLEY, J.  The following three issues are presented on this appeal:

1.  In view of the evidence presented was Raymond T. Moloney an employee of the Marlin Electric Company at the time of the accident?

2.  Is there any credible evidence in the record to support the commission's finding that Moloney sustained an injury growing out of and incidental to his employment?

3.  In view of the evidence presented, is Aetna Casualty & Surety Company estopped from denying that Moloney was an employee of Marlin Electric Company?

The Industrial Commission found that as president the deceased carried out the normal duties and functions of an employee of small corporations and concluded he was an employee of the Marlin Electric Company at the time of the injury. The commission's finding of fact is conclusive and must be sustained if supported by credible evidence. *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93.

The commission's conclusion that Moloney was an employee of Marlin Electric Company is a question of law, while the evidence establishing that relationship is a question of fact to be determined by the commission. *Duvick v. Industrial Comm.* (1963), 22 Wis. (2d) 155, 163, 125 N. W. (2d) 356.

Under sec. 102.07 (4), Stats., of the Workmen's Compensation Act an employee is described as "Every person in the service of another under any contract of hire, express or implied, . . ."

When Moloney was elected president of Marlin Electric Company on June 11, 1963, and thereafter also assumed the duties of an employee, a contract of employment was

formed. This court in *Milwaukee Toy Co. v. Industrial Comm.* (1931), 203 Wis. 493, 496, 234 N. W. 748, said:

". . . From the above it appears that the fiction of corporate entity is not to be lightly regarded. It applies to contracts of employment, and employment by resolution of the board of directors is a recognized method of effecting such contracts. . . ."

Appellants contend that where the alleged employee owns practically all of the stock in a corporation and has complete authority over his own employment, there is no employment relationship with the corporation. They argue that Moloney owned 80 out of 100 outstanding shares of Marlin Electric, that he made all of the final and ultimate decisions in connection with Marlin Electric and exercised complete authority over his employment.

Appellants rely on two cases to support their contention that Moloney was not an employee of Marlin Electric Company.

In *Leigh Aitchison, Inc., v. Industrial Comm.* (1925), 188 Wis. 218, 221, 205 N. W. 806, this court denied compensation, saying:

". . . upon the undisputed facts she did not sustain the relation of employee to any one. While it is true she devoted practically all of her time to the carrying on of the business of the corporation, in the doing of work which might be done by employees, that is not controlling. The relationship of a person to a corporation is not determined by the nature of the services performed but by the incidents of the relationship as they actually exist."

It was undisputed that Aitchison owned 127 out of 131 shares of the issued stock; that she had full control of the business; that she fixed her own salary which was substantially the total amount of the earnings of the corporation; and that her injury was not incident to her regular work, which was solely of a managerial nature.

*Aitchison, supra,* has been distinguished often. In *Milwaukee Toy Co., supra,* this court said in regard to *Aitchison* that:

". . . The case went upon the view that the corporation was a mere shell, adopted by Mrs. Aitchison for her protection, through the form of which she carried on her own business; that the business was her own business, and her professed employment was of herself by herself. She was not performing service for another under a contract of hire. She had no employer. . . ."

In *Duvick v. Industrial Comm.* (1963), 22 Wis. (2d) 155, 125 N. W. (2d) 356, this court held Duvick was not an employee. Duvick owned 125 of 128 shares outstanding in a corporation engaged in conducting a tavern business. In that case the claimant, Duvick, stated that he was self-employed and ran the tavern principally by himself. On August 20, 1958, at a meeting of the stockholders, Duvick was made liquor-license agent for the corporation by resolution. In May or June of 1959, Duvick left the tavern and returned to Minneapolis. The corporation replaced him as agent by one Tschann. Later, on November 13, 1959, Duvick returned and was injured while stacking beer cases.

In both of the above cases they were substantially "one-man" businesses. The injured party was substantially the whole business.

We believe the above-cited cases are distinguishable from the case at bar. Here, the company was started in 1946, and at that time Moloney owned 20 shares. He acquired an additional 20 in 1958 and 40 more in 1961.

This court also held in *Milwaukee Toy, supra,* at page 495, that:

". . . If the alleged employer is a corporation and the alleged employee has a controlling interest in it, the extent of his holdings and the manner in which he exerts his powers of control may be factors of some force in determining whether the alleged employee is in reality

an employee of another. But standing alone this· is of little consequence. The fundamental question is, Was such person performing service for another under a contract of hire?

"A corporation is by legal fiction a person and of course is 'another' under the terms of the workmen's compensation statute. By legal fiction the corporation is a separate entity and is treated as such under all ordinary circumstances. Circumstances occasionally arise where it appears that a person 'is simply dealing with his own property through a corporate agency as absolutely as he might deal with it as an individual,' as in *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 239, 119 N. W. 568, 121 N. W. 124. If in such case applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim, the fiction is disregarded and the transaction is considered as one of the individual himself or of the corporation, whichever will prevent the inequitable result. . . ."

The court further went on to say at page 496 that:

". . . Although one individual owns all the stock he does not thereby become the corporation. *Petersen v. Elholm*, 130 Wis. 1, 109 N. W. 76; . . ."

From the foregoing material it is evident that this court recognizes and respects the fiction of the corporate entity, and normally when one can qualify as being under a contract of hire, he usually can qualify as an employee, regardless of his ownership rights in the employer corporation.

In support of their contention that an employer-employee relationship existed, respondents rely primarily upon four cases. The cases are as follows: *Continental Casualty Co. v. Industrial Comm.* (1965), 26 Wis. (2d) 470, 132 N. W. (2d) 584; *Milwaukee Toy Co. v. Industrial Comm., supra; Fruit Boat Market v. Industrial Comm.* (1953), 264 Wis. 304, 58 N. W. (2d) 689; and *Columbia Casualty Co. v. Industrial Comm.* (1929), 200 Wis. 8, 227 N. W. 292.

In *Continental Casualty Co. v. Industrial Comm., supra,* this court said:

". . . A corporate officer and director may be an employee of a corporation if such officer performs work customarily performed by an employee. . . . In addition to his services as an attorney and officer, the deceased was involved in the day-to-day operations of the business for which he was paid as an employee and which were of a kind customarily performed as an employee."

In *Milwaukee Toy Co. v. Industrial Comm., supra,* this court held that the decedent was an employee of the company even though he held 88 percent of the company's stock. His wife and sister held an additional 10 percent of the stock.

In *Fruit Boat Market v. Industrial Comm., supra,* this court found that the claimant was an employee of the corporation even though he and his wife jointly owned 73 percent of the stock and he was president of the corporation. The court also noted in that case that the claimant "was not under the directional control of any superior officer."

In the case of *Columbia Casualty Co. v. Industrial Comm., supra,* the court held that despite the fact that the father owned 70 percent of the stock and the son owned 30 percent, the ultimate authority was vested solely in the father. Nevertheless, this court held that the claimant was an employee within the terms of the Workmen's Compensation Act.

With respect to the issue of whether or not Moloney was performing services growing out of and incidental to his employment, it is undisputed that Moloney flew to Horicon to obtain a sample of a bowling computer which the Marlin Electric Company was to manufacture. It was also undisputed that Moloney never flew to Horicon for a purpose other than business. This court in *Continental Casualty Co., supra,* held that a hunting trip

was predominantly for a business purpose. The case at bar presents a much stronger factual situation in favor of a finding of the performance of a service incidental to employment.

As to the issue of estoppel, respondents in their brief cite a number of cases in support of the proposition that an insurance carrier will at times be estopped in compensation cases where it can be proven that the insurer collected premiums based substantially on the salary of the deceased. However, no case was cited where this court actually held an insurance carrier to be estopped.

In Wisconsin, normally the dealings of the parties in respect to compensation insurance are immaterial in determining the status of an alleged employee under our compensation act. An employer-employee relationship must exist before the act applies.

In *Scholz v. Industrial Comm.* (1954), 267 Wis. 31, 38, 64 N. W. (2d) 204, 65 N. W. (2d) 1, this court, in quoting the trial court, said:

" 'There is, in our opinion, some justice in plaintiff's position that under these circumstances the employer should be held to have waived his defense and the insurance company should be held liable.

" 'However, such is not the Workmen's Compensation Law of Wisconsin. The rule seems to be, under this statute, that in each case we must determine exactly what the status of the man is and that what he is represented to be or held out to be or insured to be, is not in any sense controlling.' "

This is the law in Wisconsin today, regardless of whether or not it is equitable.

In *Independence Indemnity Co. v. Industrial Comm.* (1932), 209 Wis. 109, 114, 244 N. W. 566, the following language is found:

"It is our conclusion from a careful consideration of the act, that in the absence of liability on the part of an

employer to an employee or dependent there can be no liability of an insurance carrier. . . ."

In the instant case we conclude that the commission properly concluded that Raymond T. Moloney, Jr., was an employee of the Marlin Electric Company and that there is credible evidence in the record to support the commission's finding that Moloney sustained an injury growing out of and incidental to his employment. We further conclude that the Aetna Casualty & Surety Company was not estopped from denying that Moloney was an employee of Marlin Electric Company.

Therefore, the findings and conclusions of the Industrial Commission and order of the commission must be sustained except as to the finding "that the insurance carrier, having treated the deceased's salary as that of an employee for the purpose of assessing premium, is now estopped from denying an employer-employee relationship," and the order of the commission must be sustained.

*By the Court.*—Judgment affirmed.