FISH, Appellant, v. WHITE EQUIPMENT SALES & SERVICE, INC., and another, Respondents.

*No. 272.   Argued September 9, 1974.—Decided October 1, 1974.*
(Also reported in 221 N. W. 2d 864.)

Fish appeals from the judgment affirming the order of the department denying his claim for unemployment compensation benefits.

For the appellant there was a brief by *Charles P. Dykman, Paul S. Gratch,* and *Dykman Law Offices,* all of Madison.

For respondent Department of Industry, Labor & Human Relations there was a brief by *Uclair W. Brandt,* chief counsel, and *David A. Pearson,* assistant chief counsel.

BEILFUSS, J. Does an individual who is the president, sole stockholder, a director and manager of a corporation, and who dominates a decision to terminate the business operations of the corporation due to adverse economic circumstances, voluntarily terminate his employment without good cause attributable to his employing unit within the meaning of sec. 108.04 (7), Stats.?

In judicially reviewing the department's finding that claimant voluntarily quit his employment without good cause attributable to his employer, this court "must accept the department's determinations on such findings of fact if supported by credible evidence on the record as a whole." *Kansas City Star Co. v. ILHR Department* (1973), 60 Wis. 2d 591, 602, 211 N. W. 2d 488, rehearing denied, 62 Wis. 2d 783, 217 N. W. 2d 666; *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73. The only "finding of fact" in dispute here is the determination that "the employe terminated his employment, within the meaning of section 108.04 (7) (a) of the statutes." It is contended, however, that such determination is not a question of fact but one of law. In *Cheese v. Industrial Comm.* (1963), 21 Wis. 2d 8, 15, 123 N. W. 2d 553, this court stated, in discussing whether certain behavior amounted to "misconduct" as used in sec. 108.04 (5), Stats.:

". . . insofar as a person's acts, or his intent in doing such acts, are questions of fact, where the evidence and reasonable inferences therefrom would support any one of two or more findings, a finding by the commission is conclusive.

"Here, however, the question is whether the facts fulfil a particular legal standard. . . .

"We consider that . . . a question of law, and the commission's determination does not bind us."

In *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. 2d 502, 510, 511, 126 N. W. 2d 6, after reaffirming the principle that whether certain conduct amounts to "misconduct" within the meaning of sec. 108.04 (5), Stats., is a question of law, this court stated:

"If it is true that a determination by the commission that there has been misconduct under the standard prescribed by the statute is a conclusion of law, it does not follow that every such determination is open to an independent redetermination by this court. If several rules, or several applications of a rule are equally consistent with the purpose of the statute, the court will accept the agency's formulation and application of the standard.

"However, this court has the power in the first instance to determine whether the standard or policy choice used by the agency is consistent with the purpose of the statute. If upon consideration, we determine that a particular rule is consistent with legislative purpose, we must reject alternative rules regardless of whether they are 'reasonable' or grounded in administrative expertise."

We believe the question of whether appellant's conduct amounted to a voluntary termination of employment within the meaning of sec. 108.04 (7) (a), Stats., in this case is a question of law; therefore this court must determine whether the department's rule "is consistent with [the] legislative purpose" underlying the unemployment compensation law.

Fish contends that when the decision to cease business operations was made he was acting in his capacity as a

director, and that such decision cannot be attributed to him as a salaried employee of the corporation because the corporation was a distinct entity, separate and apart from him as an employee. If we are to hold that the claimant did voluntarily terminate his own employment we must "pierce the corporate veil" and find that the corporation was merely his alter ego.

This court has held that a corporation is an entity separate from its stockholders and directors except "where applying the corporate fiction 'would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim.'" *Jonas v. State* (1963), 19 Wis. 2d 638, 644, 121 N. W. 2d 235; *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.* (1965), 27 Wis. 2d 112, 122, 133 N. W. 2d 737. *See generally,* 1 Fletcher, Cyc. Corp. (1963 Rev. Vol.), sec. 41.

In *Leigh Aitchison, Inc. v. Industrial Comm.* (1925), 188 Wis. 218, 205 N. W. 806, the court chose to disregard the corporate entity where the claimant (for workmen's compensation benefits) owned 127 of the 131 outstanding shares of the corporation, was its salaried president and one of three directors, managed and had full control of the business, and did all the buying, hiring and firing. The court stated at pages 220, 221:

". . . It is quite apparent that in this case none of the ordinary incidents of the relationship of employer and employee exist . . . *Mrs. Aitchison* fixed her own salary, which was substantially the total amount of the earnings of the corporation, fixed her own hours of employment, prescribed her own duties, was responsible to no one; no one had the power or authority to discharge her and she was subject to no one's direction. It would seem to require no argument to show that under those circumstances she was not an employee in the sense in which that term is used in the workmen's compensation act. . . .

"We do not in reaching this conclusion ignore the fact that the corporation is a distinct entity, nor do we reach this conclusion merely because she was the owner of a

very large proportion of the stock issued, but because upon the undisputed facts she did not sustain the relation of employee to any one. . . ."

Similarly in *Duvick v. Industrial Comm.* (1963), 22 Wis. 2d 155, 161, 162, 125 N. W. 2d 356, the claimant owned 125 of the 128 shares issued, managed the business, was responsible to no one, and could not be fired. In ruling that the claimant was not entitled to workmen's compensation benefits, this court held:

"A corporation is an artificial person existing in the contemplation of the law and qualifies as an employer. In certain circumstances the corporation, although still a corporate entity, and the alleged employee may for the purposes of the act be one and the same. In that case the employer-to-employee relationship does not exist. . . .

"There is no conclusive test as to when the relationship does not exist, but the general principle is that when a person owns practically all the stock of the corporation and has complete authority over his own employment, he does not sustain the relation of employee to the corporation. . . ."

In *Marlin Electric Co. v. Industrial Comm.* (1967), 33 Wis. 2d 651, 657, 148 N. W. 2d 74, we distinguished *Leigh Aitchison, Inc.,* and *Duvick, supra,* from a line of cases with similar facts holding to the contrary [3] by noting that in both of the former cases the enterprises "were substantially 'one-man' businesses" where "the injured party was substantially the whole business."

In this case, Fish was one of 12 paid employees of the corporation. Although he was dominant in the daily affairs of the corporation, it was by no means a one-man business in the sense that he was the only employee.

[3] *Columbia Casualty Co. v. Industrial Comm.* (1929), 200 Wis. 8, 227 N. W. 292; *Milwaukee Toy Co. v. Industrial Comm.* (1931), 203 Wis. 493, 234 N. W. 748; *Fruit Boat Market v. Industrial Comm.* (1953), 264 Wis. 304, 58 N. W. 2d 689; *Continental Casualty Co. v. Industrial Comm.* (1965), 26 Wis. 2d 470, 132 N. W. 2d 584.

However, it must be noted that in response to the appeal tribunal's finding that the employer corporation had failed to make an appearance at the hearing, Fish stated to the commission, "I am the employee and in this case, I am also the employer; therefore in single person, both parties did appear. In other words the appellant and the respondent are one and the same." He has, in fact, admitted he was the alter ego of the employer corporation.

The applicable test for determining whether an individual has voluntarily terminated his employment within the meaning of sec. 108.04 (7), Stats., is stated in *Dentici v. Industrial Comm.* (1953), 264 Wis. 181, 186, 58 N. W. 2d 717:

". . . When an employee shows that he intends to leave his employment and indicates such intention by word or manner of action, or by conduct inconsistent with the continuation of the employee-employer relationship, it must be held . . . that the employee intended and did leave his employment voluntarily . . . ." *See also: Tate v. Industrial Comm.* (1964), 23 Wis. 2d 1, 126 N. W. 2d 513.

We believe that Fish, by directing the decision to cease business operations as a director did act "inconsistent[ly] with the continuation of the employee-employer relationship." In light of his admission that the corporation is his alter ego, such conduct is attributable to him as an individual employee. He has asserted that the corporation was his alter ego for the purposes of appearance at the hearing; he should not be heard to deny it for another purpose. *Swedish American Nat. Bank v. Koebernick* (1908), 136 Wis. 473, 479, 117 N. W. 1020; *Weinhagen v. Hayes* (1921), 174 Wis. 233, 249, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756.

We have concluded that the appellant voluntarily terminated his employment. However, the question remains whether he did so "with good cause attributable

to the employing unit." If so, sec. 108.04 (7) (b), Stats., entitles him to compensation.

In *Kessler v. Industrial Comm.* (1965), 27 Wis. 2d 398, 401, 134 N. W. 2d 412, this court held that in order for a quitting to be with good cause attributable to the employer:

". . . the resignation must be occasioned by 'some act or omission by the employer' constituting a cause which justifies the quitting. Good cause for quitting attributable to the employer as distinguished from discharge must involve some fault on his part and must be real and substantial. . . ."

It is apparent that White Equipment Sales & Service, Inc., was experiencing serious financial problems. However, the department was not obliged to conclude that Fish, as an employee, quit his job with good cause attributable to the employer. His relationships to the corporation as an employee and as sole owner were so interconnected that they should not be separated. The use of the corporate form of his business entity was the choice of and for the convenience of Eldon R. Fish. He was in fact his own employee and, as such, self-employed.

The purpose or public policy supporting the Unemployment Compensation Act [4] has been summarized in *Roberts v. Industrial Comm.* (1957), 2 Wis. 2d 399, 402, 403, 86 N. W. 2d 406, as follows:

"In brief, the purpose of this statute is to stabilize employment and to minimize the loss of income when an employee involuntarily is out of work through the fault or misfortune of his employer."

In this case Fish was both the employee and the employer. Eldon R. Fish as an employee could not disassociate the fault or misfortune of Eldon R. Fish as an employer so as to become eligible for unemployment

---

[4] *See* sec. 108.01, Stats.

benefits under the statute. He, in effect, terminated his employment for his own purpose.

*By the Court.*—Judgment affirmed.