230

VOCATIONAL, TECHNICAL & ADULT EDUCATION, DISTRICT 13, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Appellants.

*No. 75-321. Argued January 31, 1977.—Decided March 1, 1977.*
(Also reported in 251 N. W. 2d 41.)

For appellants there was a joint brief by *Uclair W. Brandt,* chief counsel, *David A. Pearson,* assistant chief counsel, and *James L. Pflasterer,* attorney, for Department of Industry, Labor and Human Relations; and *Gregory Wilson, Wisconsin Education Association Council,* for William S. Gosy, and oral argument by *James L. Pflasterer,* all of Madison.

For respondent there was a brief by *Bittner, Petitjean & Hinkfuss,* attorneys, and *James R. Sickel,* of counsel, and oral argument by *Robert L. Bittner,* all of Green Bay.

CONNOR T. HANSEN, J.   The Vocational, Technical & Adult Education District No. 13 (hereinafter respondent), has a facility located at Green Bay, Wisconsin, known as the Northeast Wisconsin Technical Institute (hereinafter NWTI). Gosy had been employed by NWTI as a data processing department teacher. The subject he taught was required for a person who wished to complete the data processing course.

Prior to October 16, 1973, Gosy had experienced some difficulties with Ronald Raddix, a student enrolled in the course he taught. The difficulties centered around Raddix's absence from class eight times, his missing of a six-week exam, and statements made by Raddix which Gosy perceived to be threats. Gosy discussed the matter with Raddix's advisor, Mr. Jacobs, on October 15th.

On October 16th, Gosy presented a drop slip to his immediate supervisor, Ernest DeRoche, to remove Raddix from his class. The drop slip was a standard form used by NWTI whenever a student withdrew from a course. It required three signatures to be effective, the instructor's, the student advisor's and DeRoche's. The drop slip had both Gosy's and Jacobs' signatures when submitted to DeRoche. DeRoche signed the drop slip on October 16.

On October 17th or 18th, Gosy informed DeRoche that he had received additional threats from Raddix and that Raddix was protesting being dropped from the class. DeRoche called a conference with Gosy, Raddix, Jacobs and Henry Wallace, the student services supervisor, to discuss the problem. DeRoche testified that when a difficulty arose between an instructor and a student, his role would be to hear both sides of the conflict and to make recommendations to both parties.

At the meeting, the reasons for dropping Raddix were discussed and at the conclusion of the meeting, DeRoche orally made his recommendation. The record does not reflect the content of DeRoche's oral recommendation,

but he did reduce it to writing on October 18th and it was delivered to Gosy. The October 18th memo represented the only written instruction ever received from anybody by Gosy relative to the reinstatement of Raddix. In pertinent part, it stated:

"After considerable reflection on today's conference in my office, I *request that you withdraw your drop slip* for the student in question and re-admit him to class.

"I base my request upon the following factors:

"1. I do not believe that the number of absences is so great that, with diligent application, the student cannot succeed in the course.

"2. I do not believe at this point that the one examination is sufficient indication that the student will ultimately fail.

"3. If the student wishes to continue in the Data Processing Program, which is apparently his desire, he cannot, of course, succeed in completing the requirements of the program without this course.

"If, after more time has elasped [sic], and evidence from succeeding quizzes, projects, and tests indicate failing work, I believe that it would be in the student's best interest that he drop the course and apply his time to more suitable pursuits. I believe, too, that at this point it should be relatively easy to re-admit the student without suffering any loss of authority or image before the class.

"*May I have your response to this request as soon as it is possible for you to do so.*" (Emphasis added.)

Gosy received the memo on October 19th. Gosy stated that he did not understand the memo to be an order to reinstate Raddix but that he believed that the question of reinstatement was still open.

DeRoche sent a report about the October 17th meeting to Dennis Humphreys, the administrator of NWTI, which report Humphreys received on October 18th. Humphreys called a meeting on October 19th with Gosy, DeRoche and two or three representatives of the faculty grievance

committee, including Mr. Howlett. The purpose of the meeting was to review the report from DeRoche. Humphreys testified, in effect, that he had the responsibility for making the final decision of whether Raddix should be accepted back into Gosy's class. Humphreys listened to DeRoche and to Gosy. At the end of the meeting, he ". . . instructed Mr. Gosy to place in writing the reasons why he could not honor Mr. DeRoche's direct order to accept the student back into class." Humphreys also stated, ". . . *I had told Mr. Gosy that until I would hear all sides of this, until a final decision was made I would have to honor Mr. DeRoche's decision and actions.*" (Emphasis added.) In response to the question of whether he had told Gosy on October 19th to let Raddix back into class, Humphreys stated: "I related this through Mr. Howlett, the faculty representative." Howlett was not in the supervisory chain of command.

Gosy testified that at the October 19th meeting he told Humphreys that he was not going to take Raddix back into class. Gosy stated that he did not consider Humphreys' statement to be a direct order to readmit Raddix because of ". . . the way it was said," and that although Howlett told him that his refusal to take Raddix back into his class would result in his suspension, Gosy considered that to be Howlett's opinion only.

Shortly after the meeting Gosy submitted to Humphreys, in writing, the reasons why he could not honor DeRoche's October 18th request. Humphreys reviewed the response from Gosy and decided that a further meeting with Raddix, Jacobs and Wallace was required. It was, however, too late in the afternoon to call the meeting, so Humphreys held it over until October 22nd.

On the morning of October 22nd, Humphreys reviewed Gosy's memo and reply to DeRoche's report; discussed the situation with Raddix, Wallace, the student service supervisor, and Jacobs, the student advisor; and made the final decision to ". . . stay with Mr. DeRoche." That

meant ". . . to allow the student back in class." Gosy was not present and was not informed of the decision because it was not made until shortly before his class was scheduled to start. Humphreys stated ". . . however, Mr. Gosy had been relayed this information on Friday that until he heard further from me, that my decision was to honor Mr. DeRoche's decision of accepting the student into class."

Humphreys did convey his final decision to Wallace. Wallace told Raddix to attend Gosy's class and to report back if it created any disruption. Raddix left and came back shortly with a report that Gosy stated that he would dismiss the whole class if Raddix attended. Wallace took a statement to that effect from Raddix and gave it to Humphreys. Humphreys summoned Gosy to his office, summarized the situation, and informed Gosy that because of his refusal to admit Raddix into his class, he was suspended for insubordination. The suspension was followed by a written termination of employment because of insubordination.

After Gosy had been told he was suspended and before he was given his written notice of termination, Gosy said he would not let the student back into class even though the coordinator and others were of the opinion the student should be readmitted.

Under these facts, the ILHR Department found:

"In this case, the employe was merely requested and was not ordered to reinstate the student. In addition, he reasonably considered that the ultimate decision on whether or not to reinstate the student was within his discretion and he was not advised otherwise.

"Under all of the circumstances in the instant case, the employe's action was at most a single isolated instance of a good-faith error in judgment which did not constitute misconduct connected with his employment.

"The Commission therefore finds that the employe was discharged, but not for misconduct connected with his employment."

The Commission further noted at the bottom of its decision that it was the position of the Commission "that the employer did not advise the employe that the request made of him was mandatory and that therefore the action taken by the employe was not unreasonable."

On appeal, the circuit court held that Gosy had been discharged for misconduct connected with his employment and reversed the determination of the ILHR Department and remanded to the Department for further proceedings.

Two issues are presented by the facts of this case:

(1) Are the findings of fact made by the ILHR Commission supported by credible evidence and reasonable inferences therefrom so as to be conclusive?

(2) Was Gosy's conduct, under the circumstances, misconduct connected with employment within the meaning of sec. 108.04(5), Stats., so as to bar his eligibility for unemployment benefits?

## FINDINGS OF FACT.

In the recent case of *Consolidated Const. Co., Inc. v. Casey*, 71 Wis.2d 811, 238 N.W.2d 758 (1976), this court, commenting on its review of the Department's decision stated at pp. 815, 816:

"Review by this court of DILHR decisions under the unemployment compensation statute, chapter 108, is limited to questions of law:

"108.09(7)(b) 'Any judicial review under this chapter shall be confined to questions of law, and the provisions of ch. 102, 1971 Stats., with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section.'

"Section 102.23, Stats., incorporated into chapter 108, specifically provides that factual findings made by DILHR are conclusive:

" '102.23 *Judicial review*. (1) The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive.' "

Thus, this court has held that factual findings of the Commission cannot be disturbed on appeal to this court or lower courts unless unsupported by credible evidence on the record as a whole.[1]

In *R. T. Madden, Inc. v. ILHR Dept.* 43 Wis.2d 528, 169 N.W.2d 73 (1969), a case which set forth the parameters of the scope of review of such matters, this court stated at pp. 547, 548:

"It is our conclusion the test should be whether there is any credible evidence in the record sufficient to support the finding made by the department. The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law. This is clearly not the same as a reviewing court's weighing conflicting credible evidence to determine what shall be believed. That is solely within the province of the administrative agency."

Based upon its findings of fact, and citing the definition of misconduct contained in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941), the Commission reached the conclusion that Gosy had not been discharged for misconduct connected with his employment.

The findings of fact upon which the Commission based its legal conclusion were those that Gosy ". . . was merely requested and was not ordered to reinstate the student," and that ". . . he reasonably considered that the ultimate decision on whether or not to reinstate the student was within his discretion and he was not advised other-

---

[1] *Carley Ford, Lincoln, Mercury v. Bosquette,* 72 Wis.2d 569, 573, 241 N.W.2d 596 (1976). *Abendroth v. ILHR Department,* 69 Wis.2d 754, 765, 233 N.W.2d 343 (1975); *McGraw-Edison Co. v. ILHR Depart.,* 64 Wis.2d 703, 709, 221 N.W.2d 677 (1974); *Fish v. White Equip. Sales & Service, Inc.,* 64 Wis.2d 737, 741, 221 N.W.2d 864 (1974); *Kansas City Star Co. v. ILHR Department,* 60 Wis.2d 591, 602, 211 N.W.2d 488 (1973).

wise." On appeal, the ILHR Department and Gosy concede that the final settlement of the possible reinstatement of Raddix was the responsibility of Humphreys. Under the circumstances of this case, we do not consider the question of who possessed the ultimate responsibility for the final settlement of reinstatement to be significant. Sec. 102.23 (2), Stats.

In our opinion, the question is whether any credible evidence and reasonable inferences therefrom in the record support the Commission's finding of fact that Gosy was requested and not ordered to reinstate Raddix. The respondent contends, and the circuit court held, that the reasonable inferences to be drawn from the undisputed evidence will not support that finding. The appellants contend the opposite.

The relevant evidence in this case is undisputed. Gosy sought to drop Raddix from his class. He solicited and obtained the required three signatures on the drop slip. At the October 17th meeting, however, DeRoche, Gosy's immediate supervisor, announced his recommendation on the controversy. That recommendation was reduced to writing and it is undeniable that it was in terms of a request. The request further solicited a response from Gosy. There is no indication in the record that DeRoche ordered Gosy to readmit Raddix as a result of the October 17th meeting. In fact, DeRoche himself considered the matter open as is evidenced by the fact that he subsequently asked his own supervisor, Bressler, whether any determination had been made about the acceptance of Raddix back in class. The request for a response from Gosy further indicates that DeRoche considered the matter open at that time.

At the October 19th meeting, Humphreys instructed Gosy to place in writing the reasons ". . . why he could not honor Mr. DeRoche's *direct order* to accept the student back into class." (Emphasis added.) At the conclusion of the meeting, Humphreys stated that ". . .

until I would hear all sides of this, until a final decision was made I would have to honor Mr. DeRoche's *decision and actions.*" (Emphasis added.) The "decision and actions" could only refer to DeRoche's memo of October 18th which requested Gosy to readmit Raddix. The only substantial difference between Gosy's ɩand Humphreys' version of what Humphreys said at the conclusion of the meeting was that Gosy used the word "directive" instead of "decision and actions."

The circuit court concluded that the only reasonable inference to be drawn from the evidence was that Gosy was ordered to readmit Raddix. Based upon the same evidence, the Commission drew the opposite inference, that Gosy had not been ordered to reinstate Raddix.

In *Kessler v. Industrial Comm.*, 27 Wis.2d 398, 134 N.W.2d 412 (1965), this court at p. 400 restated the following well-established rules:

". . . The plaintiff recognizes the findings of the Industrial Commission cannot be set aside on appeal in the absence of fraud if there is sufficient credible evidence or reasonable inferences which support the findings. *Grant County Service Bureau v. Industrial Comm.* (1964), 25 Wis.(2d) 579, 131 N.W.(2d) 293; *Cooper's Inc. v. Industrial Comm.* (1962), 15 Wis.(2d) 589, 113 N.W.(2d) 425; and *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 69 N.W.(2d) 573. The plaintiff also recognizes the equally well-established rule that where the evidentiary facts are not in dispute but permit of different inferences the drawing of one of such inferences is a finding of fact within the province of the Industrial Commission. *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 56 N.W.(2d) 525. This court has held, however, and the plaintiff rests his case on the proposition that if the evidentiary facts are not in dispute and permit of only one reasonable inference, the drawing of that inference is a question of law and not of fact. *Brown v. Industrial Comm.* (1960), 9 Wis.(2d) 555, 101 N.W.(2d) 788; *Gregory v. Anderson* (1961), 14 Wis.(2d) 130, 109 N.W.(2d) 675; *Cutler-Hammer, Inc. v. In-*

*dustrial Comm.*, (1961), 13 Wis.2d 618, 109 N.W.2d 468."[2]

If only one reasonable inference can be drawn from the evidence, the drawing of that inference is a question of law, and the circuit court is not bound by the determination of the Commission. If, however, different inferences can reasonably be drawn from the evidence, then a question of fact is presented and the inference actually drawn by the Commission, if supported by any credible evidence, is conclusive.

The question of whether two or more reasonable inferences can be drawn from this evidence, and the question of whether any credible evidence supports the inference here drawn by the Commission are one and the same. If no credible evidence is on record to support the inference, the drawing of that inference is unreasonable. Conversely if the drawing of inference is unreasonable, there must necessarily, under these rules, be no credible evidence to support it.

There is credible evidence in this record to support the finding of fact made by the Commission that Gosy was never ordered to readmit Raddix. DeRoche's October 18th memo was a request, a mere recommendation. Although Humphreys designated it to be a "direct order" or a "decision and actions," neither he nor DeRoche ever unequivocally ordered Gosy to reinstate Raddix. Humphreys' statement that he would honor DeRoche's decision and action until he made a final determination was reasonably subject to at least two interpretations: First, that he was elevating DeRoche's "request" to a direct order to be effective in the interim pending his final decision; and second, that he was merely concurring

[2] *See also: Kansas City Star Co., supra,* 602, 603; *Baez v. ILHR Department,* 40 Wis.2d 581, 585, 162 N.W.2d 576 (1968); *Fitzgerald v. Globe-Union, Inc.,* 35 Wis.2d 332, 337, 151 N.W.2d 136 (1967).

in the action taken by DeRoche, was tentatively agreeing with DeRoche's recommendation, but would decide the matter finally when he had heard all sides of the matter and would promulgate a direct order then.

Humphreys did, in fact, request that Gosy respond in writing stating his reasons for not readmitting Raddix. Humphreys indicated that he would make a final determination later—but he did not specifically indicate that he was making an interim determination at the October 19th meeting.

Gosy testified that he did not believe that Humphreys' statement amounted to a direct order to reinstate Raddix because of ". . . the way it was said." That testimony in itself would serve as support for the inference drawn by the Commission. *See Carley Ford, supra,* 573; *Baez, supra,* 586. The credibility of witnesses' testimony and the weight of the evidence lie exclusively within the province of the Commission. *McGraw-Edison Co., supra,* 710; *Baez, supra,* 585; *Neff v. Industrial Comm.,* 24 Wis.2d 207, 213, 128 N.W.2d 465 (1964); *Copland v. Department of Taxation,* 16 Wis.2d 543, 555, 114 N.W.2d 858 (1962).

Humphreys claimed to have directed Howlett to tell Gosy of his interim decision to let Raddix back into class. Gosy admitted that Howlett told him after the October 19th meeting that he would be suspended if he refused to take Raddix back into class. But the record also reflects that Howlett was a faculty grievance representative and that he was not in the administrative chain of command. Gosy testified that he considered Howlett's statement not to be a direct order, but rather to be Howlett's opinion. The Commission was entitled to believe Gosy and to infer that a valid order to reinstate Raddix, even if the underlying interim decision had been made, was not conveyed to Gosy.

Humphreys did make his final determination to readmit Raddix on the morning of October 22nd. The record is clear that Gosy was not present at the meeting which resulted in Humphreys' final determination, nor was he informed of the final decision until after he had refused to admit Raddix into class.

To say that credible evidence supports the finding of fact made by the Commission and that the inference drawn was reasonable is not to say that the inference drawn by the circuit court is not also reasonable, or just as reasonable or perhaps even more reasonable. But it is not for the circuit court or this court on appeal to upset the findings of fact of the Commission if supported by any credible evidence, regardless of how reasonable an alternate finding of fact may be. In *Baez, supra,* 585, this court stated:

"If conflicting inferences may be drawn from the evidence, it is the function of the department to conclude which inference (if reasonable) controls, and not the function of this court. *Fitzgerald v. Globe-Union, Inc.* (1967), 35 Wis.2d 332, 337, 151 N.W.2d 136."

Furthermore, in *Liebmann Packing Co. v. Industrial Comm.,* 27 Wis.2d 335, 340, 134 N.W.2d 458 (1965), this court noted:

"The evidence may be conflicting. The preponderance of the credible evidence may, in the view of an appellate court, be contrary to the findings of the commission; yet, pursuant to well-established principles of administrative law, these findings will not be set aside. Undoubtedly, ambiguous conclusions can be reached on the basis of the evidence herein, but if the evidence and the reasonable inferences drawn therefrom support the findings of the commission, a court is not at liberty to set those findings aside."

We conclude that the finding of fact of the Commission that Gosy was requested but was not ordered to re-

instate Raddix is supported by credible evidence and reasonable inference drawn therefrom.

## CONCLUSIONS OF LAW.

Any determination as to whether or not certain conduct amounts to misconduct for the purposes of sec. 108.04(5), Stats., is a conclusion of law and a determination by the Commission is not binding upon the courts. *Consolidated Const. Co., Inc., supra,* 816; *McGraw-Edison Co., supra,* 713; *Baez, supra,* 584; *Fitzgerald, supra,* 337. Thus both the circuit court and this court can review this determination of the Commission on appeal. The review is subject to some limitations, however. In *Fitzgerald, supra,* 337, this court stated:

" 'If it is true that a determination by the commission that there has been misconduct under the standard prescribed by the statute is a conclusion of law, it does not follow that every such determination is open to an independent redetermination by this court. If several rules, or several applications of a rule are equally consistent with the purpose of the statute, the court will accept the agency's formulation and application of the standard.' *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. (2d) 502, 510, 126 N.W. (2d) 6.

"Thus if the commission's legal conclusion, such as a determination of misconduct, is reasonable this court will sustain the commission's view even though an alternative view may be equally reasonable. *Tecumseh Products Co. v. Wisconsin Employment Relations Board* (1964), 23 Wis. (2d) 118, 129, 126 N.W. (2d) 520."

The conduct or behavior of Gosy has been established by the Commission in its findings of fact. Those findings of fact, including the crucial finding of fact that Gosy was never ordered to reinstate Raddix are supported by credible evidence and are conclusive. The only question is whether Gosy's conduct as established by the Commission constituted misconduct within the meaning of sec. 108.04

(5), Stats., so as to bar his eligibility for unemployment benefits.[3]

In the leading case of *Boynton Cab Co., supra,* 259, this court defined misconduct as that term was used in sec. 108.04(4) (a), Stats. (now sec. 108.04(5), Stats.), as follows:

"The application of these principles leads to the conclusion, in view of the matters to be taken into consideration, as stated above, that the intended meaning of the term 'misconduct,' as used in sec. 108.04(4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

The *Boynton* definition has been approved by this court a number of times.[4]

---

[3] Sec. 108.04(5), Stats., reads:

"*(5)* DISCHARGE FOR MISCONDUCT. An employe's eligibility, for benefits based on those credit weeks then accrued with respect to an employing unit, shall be barred for any week of unemployment completed after he has been discharged by the employing unit for misconduct connected with his employment; provided, moreover, that such employe shall be deemed ineligible for benefits (from other previous employer accounts) for the week in which such discharge occurred and for the 3 next following weeks."

[4] *Consolidated Const. Co., Inc., supra,* 817. *See also: McGraw-Edison Co., supra,* 711, 712; *Baez, supra,* 588, 589; *Fitzgerald, supra,* 338; *Liebmann Packing Co., supra,* 339; *Milwaukee Transformer Co. v. Industrial Comm.,* 22 Wis.2d 502, 511, 126 N.W.2d

The Commission, based upon the evidence and upon its findings of fact, concluded that Gosy's conduct "was at most a single isolated instance of good-faith error in judgment." The circuit court found a lack of support in the record for the finding of fact by the Commission that Gosy was never ordered to reinstate Raddix. Contrary to the Commission, the circuit court found that Gosy was directed to reinstate Raddix; and therefore, Gosy's refusal to readmit Raddix constituted insubordination and thus misconduct. However, we believe that the finding of fact of the Commission on the issue of order versus request to readmit Raddix is supported by credible evidence and, therefore, conclusive. It follows that the conclusion of insubordination made by the circuit court must be set aside.

Gosy was confronted with a situation where he was faced with a request from his superiors to withdraw a drop slip and readmit Raddix. That request was never unequivocally transformed to a command and transmitted to Gosy. While Gosy may have committed an error in judgment in not acceding to the requests of his superiors pending a final determination, it cannot be said as a matter of law that his conduct evinced ". . . such wilful or wanton disregard . . ." of his employer's interests as to constitute misconduct. It was entirely reasonable for Gosy to refuse to admit Raddix into class on October 22nd as he did not understand nor had he been informed that a final determination had been made, thus elevating the request to an order.

In several cases subsequent to *Boynton, supra,* this court has stressed the necessity that the discharged employee's conduct be an intentional and substantial disregard of the employer's interests, or the employee's duties.

6 (1964); *Cheese v. Industrial Comm.,* 21 Wis.2d 8, 16, 123 N.W.2d 553 (1963).

*Consolidated Const. Co., Inc., supra,* 817; *Fitzgerald, supra,* 341; *Baez, supra,* 588; *Milwaukee Transformer Co., supra,* 511; *Tate v. Industrial Comm.,* 23 Wis. 1, 5, 126 N.W.2d 513 (1964); *Cheese v. Industrial Comm., supra,* 15.[5] In *Cheese, supra,* 15 and *Tate, supra,* 6, this court stated that a person's intent in doing acts for which he is discharged is a question of fact. *See also: Fitzgerald, supra,* 337; *Liebmann, supra,* 339. Here the Commission resolved the issue in Gosy's favor finding a good-faith error in judgment rather than an intentional insubordinate defiance of the employer's interests. Credible evidence supports that finding.

The presumption is that the benefit claimant is eligible for unemployment benefits. The party resisting the payment of benefits has the burden of establishing that the case comes within one of the disqualifying provisions of the unemployment compensation law. *Consolidated Const. Co., Inc., supra,* 820; *Kansas City Star Co., supra,* 602; *Transport Oil, Inc. v. Cummings,* 54 Wis.2d 256, 268, 195 N.W.2d 649 (1972).

The Commission reasonably concluded that the employer failed to meet his burden of proof. Both the fact that Gosy could reasonably believe that he was confronted only with a request rather than an order and the fact that the Commission held that Gosy's conduct constituted a good-faith error in judgment rather than an intentional disregard for his employer's interests are supported by credible evidence and constitute a basis for the conclusion of the Commission. Moreover, the conclusion is consistent with the purpose of the unemployment compensation law as expressed in *Boynton, supra,* 258, 259, and *Allen-Bradley Co. v. ILHR Department,* 58 Wis.2d 1, 7, 205 N.W.2d 129 (1973).

[5] But see *McGraw-Edison Co., supra,* 712, where this court recognized the concept of constructive intent in finding misconduct.

Under the circumstances of this case, we do not believe it can be said as a matter of law that the conduct of Gosy constituted misconduct as the term is used in sec. 108.04 (5), Stats.

*By the Court.*—Judgment reversed.