STATE of Wisconsin, Plaintiff-Respondent,

v.

Rex B. ROBERTS, Defendant-Appellant.†

Court of Appeals

*No. 94-2583-CR. Submitted on briefs May 9, 1995.—Decided August 17, 1995.*

(Also reported in 538 N.W.2d 825.)

†Petition to review denied.

447

448

For the defendant-appellant the cause was submitted on the briefs of *Michael Yovovich*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Dykman, Sundby, and Vergeront, JJ.

VERGERONT, J.   Rex Roberts appeals from a judgment convicting him of possessing drug paraphernalia and a controlled substance with intent to deliver. The issue is whether the trial court properly denied Roberts' motion to suppress physical evidence discovered in a warrantless search of his automobile. Because we conclude that Roberts did not have a legitimate expectation of privacy in his automobile after he fled to evade the police, we affirm.

The relevant facts are not in dispute. Roberts was charged with possession of marijuana with intent to deliver, possession of drug paraphernalia, and a tax stamp violation which was eventually dismissed. The charges arose out of the discovery of marijuana during a search of Roberts' automobile after Roberts fled from the automobile following an attempted arrest by a police officer for outstanding traffic warrants.

Roberts filed a motion to suppress the evidence seized from his automobile on the grounds that the search was conducted in violation of the search and seizure provisions of the United States and Wisconsin Constitutions. The trial court denied his motion. Roberts then pleaded guilty to the two possession charges

and was placed on two concurrent three-year probationary terms. Because the evidence supporting his convictions was the subject of a motion to suppress, Roberts appeals the suppression ruling and the subsequent judgment of conviction under § 971.31(10), STATS. *See State v. Tompkins*, 144 Wis. 2d 116, 118, 423 N.W.2d 823, 824 (1988).

Based on the testimony at the suppression hearing, the trial court made the following findings of fact. Bruce Munzenburger, a police officer from the Village of Bangor Police Department, observed an automobile pull up to a nearby intersection. Munzenburger was not familiar with the automobile and became suspicious when its two male occupants quickly looked away from him. Munzenburger ran a license check on the vehicle. The La Crosse County radio dispatcher told Munzenburger that the automobile was registered to Rex Roberts and that there were outstanding warrants for Roberts for the failure to pay $1,270 in traffic fines.

Upon receiving this information, Munzenburger followed the automobile to Rockland, although he did not activate the emergency lights and siren of his marked squad car. On the east side of Rockland, Roberts pulled into a driveway of a residence. Munzenburger pulled over to the side of the road, activated his flashing lights and got out. A person later identified as Roberts got out of the driver's side of the automobile. Because the radio dispatcher had advised him that Roberts could be "quite a handful," Munzenburger drew his sidearm and directed Roberts to put his hands in the air and to get down on the ground. Roberts ignored these commands and fled into a swampy area. Munzenburger briefly pursued Roberts on foot without success and returned to his squad car to radio for assistance. Roberts' passenger, who identified

himself as Phil Axelson, remained with the automobile and was detained. Axelson told Munzenburger that it was Roberts who was driving the vehicle, but could not explain his flight.

Robert Schuppel, an officer from the Village of West Salem Police Department, arrived in response to Munzenburger's request for assistance. Axelson told Schuppel that Roberts was "ex-military." Schuppel had overheard the dispatcher tell Munzenburger that Roberts was a "handful." This information, in conjunction with the fact that Roberts had fled into the night on foot, raised in Schuppel's mind the possibility that Roberts could be dangerous and that there might be weapons in the vehicle. Also, Schuppel did not necessarily believe that Axelson was truthful in his identification of the driver and felt that a search of the automobile might yield identification information, such as a wallet.

Schuppel searched the passenger compartment of Roberts' vehicle. In the console between the front seats, he found a clear plastic bag containing a small quantity of a green leafy substance that appeared to be marijuana. Inside a tan shopping bag, he found a larger quantity of a similar substance. He seized both items and gave them to Munzenburger, who put them in the trunk of his squad car.

Dale Stickney, a police officer for the City of Sparta, arrived next. He was acquainted with Roberts and, when given a description of Roberts by Officer Munzenburger, confirmed that the person who fled was probably Roberts. A second search of the automobile on the passenger side of the console produced a third source of suspected marijuana. Based on this discovery, Axelson was placed under arrest. The officers

searched the area for about an hour but could not find Roberts.

At the preliminary hearing, Munzenburger testified that when Roberts got out of his car, Munzenburger told Roberts to put his hands up and that he was under arrest; Roberts ignored him and then took off running. At the suppression hearing, Munzenburger did not repeat the testimony that he told Roberts he was under arrest. The State argues that in reviewing the court's ruling on the defendant's suppression motion, we may consider this testimony from the preliminary hearing, citing *State v. Mazur*, 90 Wis. 2d 293, 304, 280 N.W.2d 194, 199 (1979). Roberts' reply brief does not dispute that he was told he was under arrest before he fled or dispute the propriety of our considering this testimony. Accordingly, in our analysis we consider this testimony along with the trial court's findings of fact based on the testimony at the suppression hearing.

In reviewing a trial court's denial of a motion to suppress evidence, we will uphold the trial court's findings of fact unless they are clearly erroneous. Section 805.17, STATS.; *State v. Krier*, 165 Wis. 2d 673, 676, 478 N.W.2d 63, 65 (Ct. App. 1991). However, whether a search passes constitutional muster is a question of law subject to de novo review. *State v. Richardson*, 156 Wis. 2d 128, 137-38, 456 N.W.2d 830, 833 (1990).

Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution guarantee the right of citizens to be free from unreasonable searches and seizures. The Wisconsin Supreme Court follows the United States Supreme

452

Court's interpretation of the search and seizure provision of the Fourth Amendment in construing the same provision of the Wisconsin Constitution. *State v. Fry*, 131 Wis. 2d 153, 171-72, 388 N.W.2d 565, 573, *cert. denied*, 479 U.S. 989 (1986). Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are unreasonable under the Fourth Amendment unless they meet the requirements of certain specifically established and well-delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993).

■■■■■

However, before a defendant can invoke the protections of the Fourth Amendment, he or she must establish a legitimate expectation of privacy in the object searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). A defendant does not have a reasonable expectation of privacy in an item once it has been abandoned. *Abel v. United States*, 362 U.S. 217, 241 (1960); *State v. Bauer*, 127 Wis. 2d 401, 407, 379 N.W.2d 895, 898 (Ct. App. 1985) ("Warrantless seizure of property whose owner has abandoned it . . . does not violate the fourth amendment").

■■■

The State argued before the trial court, as it does on appeal, that by fleeing when the officer attempted to arrest him, Roberts lost any legitimate expectation of privacy he had in his automobile. The trial court did not decide this issue but instead concluded that the vehicle search was lawful because, had Roberts remained on the scene and submitted to arrest, a warrantless search of the vehicle would have been permissible. The trial court also concluded that exigent circumstances justified the warrantless search. We do not review these rulings because we conclude that Rob-

erts did not have a reasonable expectation of privacy in his automobile after he fled the scene and therefore the search of the automobile did not violate his right under the federal and state constitutions to be free from unreasonable searches.

In the fourth amendment context, the test for abandonment of property is distinct from the property law notion of abandonment; it is possible for a person to retain a property interest in an item but nonetheless to relinquish his or her reasonable expectation of privacy in the object. *United States v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989). An actual, subjective expectation of privacy is not sufficient to create fourth amendment protection; in addition, the expectation must be one society is prepared to accept as objectively reasonable. *California v. Greenwood*, 486 U.S. 35, 39 (1988); *State v. West*, 185 Wis. 2d 68, 89, 517 N.W.2d 482, 489, *cert. denied,* 115 S. Ct. 375 (1994).

The owner of a motor vehicle has a reasonable expectation of privacy in the passenger compartment of the vehicle, although that expectation is diminished by the mobility of the vehicle. *California v. Carney*, 471 U.S. 386, 390 (1985). A Wisconsin court has applied the concept of abandoned property in the fourth amendment context, *see Bauer*, but has not addressed the application of that concept to an automobile. However, other jurisdictions have uniformly held that an automobile, like other property, loses fourth amendment protection if abandoned. In particular, other jurisdictions have held that a suspect fleeing police and leaving behind a vehicle does not have a legitimate expectation of privacy in the vehicle for fourth amendment purposes. *See, e.g., United States v. Walton*, 538

F.2d 1348, 1354 (8th Cir.), *cert. denied*, 429 U.S. 1025 (1976); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir.), *cert. denied*, 115 S. Ct. 98 (1994); *United States v. Edwards*, 441 F.2d 749, 752-54 (5th Cir. 1971); *United States v. D'Avanzo*, 443 F.2d 1224, 1226 (2d Cir.), *cert. denied*, 404 U.S. 850 (1971).[1] Roberts argues that there are factual distinctions between the cases finding that a vehicle has been abandoned and this case. That is true. But the common and critical fact in all the cases is that, while attempting to escape police, a suspect fled from a vehicle. That fact is present here.

Roberts also argues that the record is insufficient to find abandonment because it does not disclose whether the car door was open or closed and whether the keys were left in the ignition when Roberts fled, nor does it indicate ownership of the driveway and whether Roberts had permission to park there. However, the proponent of a motion to suppress evidence because of a fourth amendment violation has the burden of showing that he or she has a legitimate expectation of privacy; it is not the State's burden to show that the proponent does not have a legitimate expectation of privacy. *State*

---

[1] State courts that have reached the same conclusion include: *Thom v. State*, 450 S.W.2d 550 (Ark. 1970); *State v. Lawson*, 394 So. 2d 1139 (Fla. Dist. Ct. App. 1981); *People v. Arnett*, 577 N.E.2d 773 (Ill. App. Ct. 1991); *State v. Grissom*, 840 P.2d 1142 (Kan. 1992); *State v. Kelly*, 576 So. 2d 111 (La. Ct. App. 1991); *State v. Achter*, 512 S.W.2d 894 (Mo. Ct. App. 1974); *Henderson v. State*, 695 P.2d 879 (Okla. Crim. App. 1985); *Hudson v State*, 642 S.W.2d 562 (Tex. Ct. App. 1982), *limited by Hawkins v. State*, 758 S.W.2d 255 (Tex. Crim. App. 1988); *Wells v. Commonwealth of Virginia*, 371 S.E.2d 19 (Va. Ct. App. 1988).

*v. Whitrock*, 161 Wis. 2d 960, 972, 468 N.W.2d 696, 701 (1991). Assuming, without deciding, that one or more of the factors Roberts points to is relevant to the question of whether he had a legitimate expectation of privacy in his automobile after he fled, Roberts bears the burden of presenting evidence on these points. His failure to do so weakens his position, not the State's position.

Roberts knew, at least after he got out of his car, that Officer Munzenburger wanted to arrest him for outstanding traffic warrants. He ran from the officer, at night, into a swampy area and could not be located, although the officers searched for an hour.[2] The only reasonable inference from the testimony at the suppression hearing is that he left the car unlocked when he fled.[3] Under these circumstances, we do not believe that society is prepared to accept an expectation of privacy in the vehicle as objectively reasonable. The search of Roberts' automobile was therefore not a violation of his right under the state and federal constitutions to be free from unreasonable searches, and the results of the search were properly admitted.

*By the Court.*—Judgment affirmed.

---

[2] Events occurring after abandonment may be considered by the court as evidence of intent to abandon. *United States v. Winchester*, 916 F.2d 601, 604 (11th Cir. 1990).

[3] Where there is only one reasonable inference to be drawn from the evidence, the drawing of that inference is a question of law. *Vocational, Technical & Adult Educ., Dist. 13 v. DILHR*, 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977).