STATE of Wisconsin, Plaintiff-Respondent,

v.

Elliot B. RUSS, Sr., Defendant-Appellant.

Court of Appeals

*No. 2008AP1641–CR. Submitted on briefs March 3, 2009.*
*—Decided April 7, 2009.*

2009 WI App 68

(Also reported in 767 N.W.2d 629.)

764

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Barry S. Buckspan*, Milwaukee.

On behalf of the plaintiff-respondent,the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Stephen W. Kleinmaier*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Elliot B. Russ, Sr., appeals a judgment entered after he pled no-contest to uttering a forged document involving the false notarization of affidavits. *See* WIS. STAT. § 943.38(2). He claims that the circuit court improperly denied his motion to suppress.[1] We affirm.

I.

¶ 2.  The essential facts are not disputed. The only persons who testified at the suppression hearing were the bailiff and court commissioner who found affidavits of service that Russ left on a bench in the Milwaukee County Courthouse.

¶ 3.  The bailiff, Milwaukee County Deputy Sheriff Craig Carlson, testified that on August 7, 2006, he was working in small-claims court. According to Carlson, he was taking files to another courtroom between 11:30 a.m. and noon when he noticed a folder sitting on a bench "[o]utside in the public hall." Carlson told the circuit court that he walked over to the folder and opened it up "to try to ascertain the ownership of the

---

[1] A defendant may appeal an order denying a motion to suppress evidence even though the judgment of conviction rests on a guilty or no-contest plea. WIS. STAT. § 971.31(10); *State v. Damaske*, 212 Wis. 2d 169, 188, 567 N.W.2d 905, 914 (Ct. App. 1997) (Section 971.31(10) "applies to 'no contest' pleas as well."). Russ does not contend that there was not a factual basis for his plea.

property." Carlson testified that he "could just tell by the top piece of paper that it was an affidavit of service of Elliot Russ," a private process server, but that he did not see Russ in the hallway or in adjoining courtrooms.

¶ 4. On his way back to the small-claims courtroom Carlson again saw the folder on the bench. Carlson testified that he told the small-claims court commissioner that someone had left a folder in the hallway. According to Carlson, the commissioner brought the folder into the courtroom, made photocopies, and left the folder on the judge's bench. Carlson told the circuit court that after the courtroom opened for the afternoon session, Russ came in and asked if his folder was there. One of the clerks gave it to him.

¶ 5. Judicial Court Commissioner David Sweet testified that he was conducting a hearing around 10:30 a.m. on August 7 when "Carlson kind of poked his head in and mentioned that he had seen some service of process papers out in the hallway." Sweet described the hallway as the "main corridor" in front of "at least ten courtrooms" on the fourth floor of the courthouse. He estimated that on a typical morning in small-claims court there "would [be] maybe over 100 people sitting in the audience at any given time." According to Sweet, when he went into the hallway, he saw "numerous papers spread . . . for about a two or three-foot area . . . on the wooden bench." Sweet testified that the papers were not in "any sort of folder or container." Sweet said he looked at the papers and saw an affidavit of service with the name of Russ's process service company, but did not see Russ in the hallway. Sweet then returned to the small-claims court without the papers.

¶ 6. Ten to twelve minutes later, Sweet went back out to the hallway. He testified that he saw the papers "still spread out on the bench," so he picked them up

and took them with him into the small-claims courtroom. Sweet told the circuit court that as he was straightening out the papers he "looked more closely" at them and noticed that, while some of the affidavits were "signed, notarized, [and] sealed," they "did not appear to be completely filled in." According to Sweet, he photocopied the affidavits. He then gave the originals to the clerk with instructions to give the affidavits to Russ if he asked for them.

¶ 7.   Sweet testified that he did not have a warrant or Russ's permission to look at the affidavits. Sweet told the circuit court that some time before August 7 he was aware that a small-claims circuit court judge had complained about Russ to the sheriff's department. Sweet "believe[d]" that he eventually gave the photocopies of the affidavits to "the presiding judge."

¶ 8.   The circuit court denied Russ's suppression motion. In a written decision and order, it concluded that the Fourth Amendment did not apply because Russ lost any reasonable expectation of privacy he had in the affidavits.

II.

██ ██

¶ 9.   In reviewing an order suppressing or refusing to suppress evidence, we uphold a circuit court's findings of historical fact unless they are clearly erroneous. *State v. Roberts*, 196 Wis. 2d 445, 452, 538 N.W.2d 825, 828 (Ct. App. 1995); *see also* Wis. Stat. Rule 805.17(2) (made applicable to criminal proceedings by Wis. Stat. § 972.11(1)). Whether a search or seizure has occurred, however, is a question of law that we review *de novo*. *State v. Richardson*, 156 Wis. 2d 128, 137–138, 456 N.W.2d 830, 833 (1990).

¶ 10.  Russ contends that the circuit court erred when it denied his motion to suppress because, he argues, Commissioner Sweet's "handling and photo-copying" of the affidavits was an illegal search and seizure in violation of the Fourth Amendment. Russ does not appear to claim that the circuit court's findings of fact are clearly erroneous. We thus review *de novo* whether there was an unreasonable search or seizure when the commissioner:  (1) picked up and examined the affidavits; and (2) photocopied them.

¶ 11.  The first issue turns on whether Russ had a reasonable expectation of privacy in the affidavits that he left on the bench. *See Roberts*, 196 Wis. 2d at 453, 538 N.W.2d at 828 ([B]efore a defendant can invoke the protections of the Fourth Amendment, he or she must establish a legitimate expectation of privacy in the object searched.).

> The determination of whether the defendant had a reasonable expectation of privacy depends on two sepa-rate questions. The first question is whether the indi-vidual by his conduct exhibited an actual, subjective expectation of privacy. The second question is whether such an expectation is legitimate or justifiable in that it is one that society is willing to recognize as reasonable.

*State v. Rewolinski*, 159 Wis. 2d 1, 13, 464 N.W.2d 401, 405 (1990). We focus on the second aspect of the test, that is, whether Russ had an objectively reasonable expectation of privacy in the affidavits. *See Roberts*, 196 Wis. 2d at 454, 538 N.W.2d at 829 ("An actual, subjective expectation of privacy is not sufficient to create fourth amendment protection; in addition, the expectation must be one society is prepared to accept as objectively reasonable.). We conclude that he did not.

¶ 12. Although Russ's main brief on this appeal asserts that, as testified-to by Carlson, the affidavits were in a folder when *Carlson* saw them, the circuit court found that when Commissioner Sweet first saw them they "were spread out on a public bench":

> [The affidavits] were spread out on a public bench so that any member of the public could take them and dispose of them in any way they chose.
>
> . . . .
>
> Any member of the hundreds of individuals who come and go from the ten courts on the fourth floor could have taken the documents, photocopied them, photographed them or threw them in the garbage.

The circuit court thus concluded that the commissioner did not invade Russ's privacy when he took the documents. We agree. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *see also State v. Barrett*, 401 N.W.2d 184, 189–190 (Iowa 1987) (no reasonable expectation of privacy in personal journals inadvertently left in restaurant); *State v. Flynn*, 360 N.W.2d 762, 765, 766 (Iowa 1985) ("the place where seized property is located may be so exposed as to negate any reasonable expectation of privacy") (no reasonable expectation of privacy in paper sacks containing financial records and cassette tapes left under a tarpaulin on a golf course "accessible to all of the private members and others given permission to enter"). There was thus no illegal search when the commissioner picked up and looked at the affidavits.

¶ 13. There was also no illegal seizure when the commissioner photocopied the affidavits. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Here, as we have seen, the commissioner was lawfully entitled to look at the affidavits, which, as the circuit court found, were in plain view and [t]heir potential incriminating character was immediately apparent. *See Katz*, 389 U.S. at 351; *Cardwell v. Lewis*, 417 U.S. 583, 591–592, 594 (1974) (The Fourth Amendment was not violated by "the taking of paint scrapings from the exterior of the vehicle left in the public parking lot."); *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006) (photographing items in plain view does not violate the Fourth Amendment). Russs Fourth Amendment rights were not violated. Accordingly, the circuit court properly denied Russs motion to suppress.

*By the Court.*—Judgment affirmed.