NEUBAUER, C.J.[1]
¶ 1 Jodi J. Lux appeals from a judgment convicting her of operating a motor vehicle while intoxicated (OWI) (third offense) and an order denying her postconviction motion in which she asserted her trial counsel was ineffective for having failed to challenge the police officer's warrantless search of her residence. Because we conclude the search was conducted as part of the officer's community caretaker function, it was lawful and therefore her ineffective assistance of counsel claim fails. We affirm.
BACKGROUND
¶ 2 In January 2016, Officer Randy Johnson of the Oshkosh Police Department was dispatched to a hit-and-run accident at 219 Bay Street in Oshkosh. At the scene, he observed heavy damage to the steps in front of the residence. He found what appeared to be the front license plate of the suspect vehicle. He soon located, less than a block away, the suspect vehicle parked at 524 Otter Avenue. It showed signs of having been in an accident, with white wood embedded in the grille, matching the color of wood at the accident scene. In parking the vehicle, the driver went over a low metal fence. Johnson followed footprints in the snow from the vehicle to the back of the residence.
¶ 3 When Johnson knocked on the back door, it opened and revealed a common hallway between the upper and lower units. He knocked on the lower unit's door. No one answered. From upstairs, a woman asked the officer why he was there. After explaining the situation and showing her the suspect vehicle, the woman stated she did not know who owned the vehicle, but that it was probably someone to see her grandson, who lives in the lower unit.
¶ 4 According to Johnson's narrative police report, the elderly woman indicated that she was going to "confront" her grandson to find out what was going on. Because the driver had just been in a hit-and-run accident, Johnson "was concerned with this elderly female going inside by herself so I asked if she wanted me to go in with her and she stated 'come on in' and she waved me with her hand." The woman walked past the officer, opened the lower unit door without knocking, and entered. He followed her, further explaining that he "initially was concerned. She's an elderly [woman] walking into an apartment that I [don't] know who's in there, who's driving the car. I was concerned for her going in there by herself. I expressed that and asked her if I could come in, and she told me that I could." He estimated she was about eighty years old. Johnson did not direct the woman to enter the unit, testifying in response to the court's questions at the postconviction motion hearing, "She basically walked away from me like she was mad and was going to go in there and figure out what was going on." Johnson further testified:
When I went in there, I was more concerned about the safety of this 80-year-old lady going into an apartment that she didn't know who was in there, had no idea who was driving this car or what they were doing in this apartment, why they didn't stop for now two accidents.
¶ 5 Once in, they were met by the woman's grandson. He stated that the person they were looking for was a friend of his mother's, and the friend was in one of the bedrooms. After Johnson knocked on the bedroom door, Lux opened it and spoke with Johnson. She was eventually arrested for OWI.
¶ 6 In May 2016, Lux was charged with OWI (third offense). She moved to suppress evidence, arguing Johnson did not have probable cause for the arrest. After a hearing, the court denied the motion. Lux was convicted and sentenced.
¶ 7 In September 2017, Lux filed a postconviction motion asserting she was denied the effective assistance of counsel because trial counsel failed to move to suppress evidence based on an illegal search of her residence. After a hearing, the court denied the motion, reasoning that Johnson's search was lawful under the community caretaker exception to the warrant requirement, such that trial counsel was not ineffective for failing to challenge it. Lux appeals.
DISCUSSION
Standards of Appellate Review and an Ineffective Assistance of Counsel Claim
¶ 8 We will uphold a circuit court's findings of fact unless clearly erroneous. State v. Maddix , 2013 WI App 64, ¶ 12, 348 Wis. 2d 179, 831 N.W.2d 778. Applying constitutional principles to the facts, however, is a question of law that we review de novo. Id. Accordingly, we will "independently review whether an officer's community caretaker function satisfies the requirements of the Fourth Amendment and Article I, Section 11 of the federal and state Constitutions." Id. (citation omitted).
¶ 9 To succeed on an ineffective assistance of counsel claim, the defendant must show that counsel's performance was deficient because the "errors [were] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington , 466 U.S. 668, 687 (1984). Second, the defendant must show that the deficient performance prejudiced her defense because the "errors were so serious as to deprive [her] of a fair trial, a trial whose result is reliable." Id. Both showings are necessary, such that if one is missing, the claim fails. Id.
¶ 10 We need not decide whether counsel for Lux performed deficiently. Lux has not met the second requirement of an ineffective assistance of counsel claim-prejudice. To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. As applied here, Lux would have to show that, had her counsel moved to suppress evidence on the ground of an unlawful search, the motion would have been granted. We agree with the circuit court that Johnson's search was lawful pursuant to the community caretaker exception, such that a challenge to the search would have been unsuccessful.
The Community Caretaker Exception
¶ 11 Warrantless searches of private residences are presumptively unreasonable. State v. Horngren , 2000 WI App 177, ¶ 8, 238 Wis. 2d 347, 617 N.W.2d 508. Searches that are undertaken, however, by police as a community caretaker to protect persons and property may be constitutionally permitted without a warrant. State v. Pinkard , 2010 WI 81, ¶ 14, 327 Wis. 2d 346, 785 N.W.2d 592. "An officer exercises a community caretaker function 'when the officer discovers a member of the public who is in need of assistance.' " Id. , ¶ 18 (citation omitted). This exception is the same under both the state and federal constitutions. Id. , ¶ 14.
¶ 12 To determine whether a warrantless entry is permissible under the community caretaker exception, the court must answer the following: (1) whether a search or seizure under the Fourth Amendment has occurred;[2] (2) if so, whether the officer was exercising a bona fide community caretaker function; and (3) if so, whether the public interest outweighs the intrusion upon privacy such that the community caretaker function was reasonably exercised within the context of a home. Pinkard , 327 Wis. 2d 346, ¶ 29.
¶ 13 Lux asserts that Johnson was not exercising a community caretaker function, but instead investigating a criminal traffic offense and tracking down the driver. The officer's conduct, she argues, was not "totally divorced from the detection, investigation, or acquisition of evidence" related to the offense. See Cady v. Dombrowski , 413 U.S. 433, 441 (1973). We disagree.
¶ 14 In order to be a bona fide community caretaker function, the police must have an "objectively reasonable basis" to believe that a person needs assistance. State v. Gracia , 2013 WI 15, ¶ 17, 345 Wis. 2d 488, 826 N.W.2d 87. When making this determination, we look at the totality of the circumstances at the time of the conduct. Id. The officer's subjective intent is relevant, but is only one factor to consider. Id. , ¶ 21.
¶ 15 Johnson testified that he entered the lower unit for the protection of the elderly woman. She was about eighty. Despite being the owner of the building and the occupants' mother and grandmother, she did not recognize the damaged car parked out in front. She was determined-to the point of anger-to "confront" the situation, even "walk[ing] away from [Johnson] like she was mad and was going ... in there and figure out what was going on." Tellingly, when Johnson asked her if she wanted him to go in with her, she readily agreed and "waved" him in. Although unaware of who the driver was, Johnson at least knew it was someone who just drove a car into a residence with such force that the "front steps were ripped completely off," and yet drove on without reporting it, and plowed over a small fence while parking the vehicle, which still had wood from the steps embedded in the grille. He also knew that the woman did not know the person who drove the car or what he or she was doing in the apartment. The totality of the circumstances constituted a reasonably objective basis to be concerned that the elderly woman, upon entering the lower unit to investigate the entry of an apparent stranger, could face a situation that was volatile, unpredictable, and unsafe.
¶ 16 Lux asserts, however, that safety of the elderly woman was not the sole motivating factor for Johnson's entry, as he was not investigating a crime of violence, had no "specific" grounds to believe the woman would be attacked, separated from her as he searched for the driver, and that the bar against warrantless searches would weaken significantly if police were permitted to enter a residence to protect those within every time the police believed a criminal suspect was inside.
¶ 17 Lux misinterprets the test for a bona fide community caretaker function. Although the United States Supreme Court in Cady described the community caretaker function as being "totally divorced" from the investigation of a crime, our Wisconsin Supreme Court has made it clear that this language required "only an objectively reasonable basis" to believe assistance was needed and that community caretaker and law enforcement functions "are not mutually exclusive." Gracia , 345 Wis. 2d 488, ¶ 18 ; Pinkard , 327 Wis. 2d 346, ¶ 40 (citation omitted). That protecting the elderly woman may have entailed a modest degree of investigation does not negate Johnson's function as a community caretaker, the objective basis for which we have already discussed. Further, it would be unreasonable to require an officer, before invoking the community caretaker exception, to know of the specific probability of an attack. See State v. Matalonis , 2016 WI 7, ¶ 43, 366 Wis. 2d 443, 875 N.W.2d 567 (pointing out the constitution "does not inflexibly require that officers be concerned about specific, 'known' individuals" who may be injured before acting as community caretakers).
¶ 18 Having determined Johnson entered the apartment as a community caretaker, we now must determine whether he exercised his community caretaker function reasonably. This requires a balancing of interests: whether the public interest or need outweighs the nature and degree of the intrusion upon the individual's constitutionally protected privacy. Pinkard , 327 Wis. 2d 346, ¶ 29. In balancing these interests, we consider:
(1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the [search], including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.
Id. , ¶ 42 (footnote and citation omitted).
¶ 19 With regard to the first factor, Lux asserts that any danger and exigency were "theoretical" and therefore were outweighed by the intrusion into her privacy. We disagree. Although the danger to the elderly woman was of course not certain, we have already explained that it is reasonable to believe that the danger was real. Indeed, the elderly woman, despite being in her own building, affirmatively agreed to being accompanied by the officer. Given the woman's own immediate resolve to investigate the entry of an apparent stranger who entered the apartment after two accidents, Johnson's entry with her was exigent.
¶ 20 The second factor of attendant circumstances-time, location, and degree of displayed authority and force-also supports the reasonableness of the officer's search. Johnson did not control the time of day or location, as he was responding to a hit-and-run accident at a particular address. The display of overt authority and force was practically nonexistent. Johnson asked the elderly woman for permission to enter, and she granted it. Johnson knocked on the bedroom door, Lux opened it, and she began answering his questions. Lux does not allege that Johnson drew his gun, gave loud or stern verbal commands, or otherwise wielded his authority in a markedly assertive way.
¶ 21 The third factor weighs in favor of Lux, as she was in a residence as opposed to a vehicle-one has a higher expectation of privacy in their residence than in their vehicle. See State v. Ultsch , 2011 WI App 17, ¶¶ 11-12, 331 Wis. 2d 242, 793 N.W.2d 505. But we note that Lux's status as a guest/occupant and her relationship to the residents are unclear. There are indications that she was a guest-the grandson stating she was "visiting" his mother-as opposed to an established resident. Depending on the circumstances, a guest may not have the same expectation of privacy as the host or actual resident, see State v. Fox , 2008 WI App 136, ¶¶ 20-22, 314 Wis. 2d 84, 758 N.W.2d 790 (concluding that the defendant, as a guest, had no reasonable expectation of privacy and therefore lacked standing to assert Fourth Amendment protections), but because the record is uncertain on this point, we do not include it as part of our analysis.
¶ 22 The fourth factor is the alternatives to Johnson's entry. As already discussed, the elderly woman was determined to go into the unit. If Johnson was going to protect her, he had to do so immediately. A warrant was not an option. It is true, as Lux points out, he could have asked the woman not to enter the apartment, but Lux does not suggest that the woman was under any obligation to comply and, given her demeanor and her status as the owner of the building and mother and grandmother to the residents, it appears unlikely she would have held back. Further, Johnson had already tried to contact the individuals inside, who did not respond to his knocking.[3]
¶ 23 In sum, the circumstances show (1) a significant public interest and an exigent situation, (2) a fairly minimal intrusion of a private residence with no overt displays of force or authority, and (3) no real alternatives that would have been effective. On balance, the officer's exercise of his community caretaker function was reasonable because the public interest in his entry of the apartment for the protection of the elderly woman outweighed Lux's privacy interest.
¶ 24 Based on the foregoing, Johnson's search was lawful. Had Lux's trial counsel challenged the search, it would have been unsuccessful. Lux was therefore not prejudiced by counsel's alleged failure to make that challenge. Her motion claiming ineffective assistance of counsel was properly denied.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The State does not dispute that Johnson's entry constituted a search under the Fourth Amendment.

Given our holding, we need not address the only other issue addressed by the parties-third-party consent for the search. See Lake Delavan Prop. Co. v. City of Delavan , 2014 WI App 35, ¶ 14, 353 Wis. 2d 173, 844 N.W.2d 632 (when one issue is dispositive on appeal, we need not address other issues).