**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 30, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP840-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CF40

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

　V.

ANDREW R. NETZER,

　　DEFENDANT-APPELLANT.

---

　　　　　APPEAL from a judgment of the circuit court for Wood County: TODD P. WOLF, Judge.  *Affirmed*.

　　　　　Before Fitzpatrick, P.J., Kloppenburg and Nashold, JJ.

　　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Andrew Netzer appeals a judgment convicting him, based upon the entry of no-contest pleas, of possession of a firearm by a felon and endangering safety by use of a dangerous weapon. Netzer challenges a suppression ruling that would have allowed at trial the admission of evidence seized after a warrantless search of his home. We conclude that the challenged search was constitutionally permissible as a protective sweep performed incident to the exercise by police of their community caretaker function. We therefore affirm.

## BACKGROUND

¶2 J.S.C.[1] contacted police to request a welfare check on R.E.K. J.S.C. reported that Netzer, the ex-boyfriend of R.E.K., had shown up at J.S.C.'s apartment while R.E.K. was there. After Netzer pointed a gun at J.S.C., R.E.K. left with Netzer. Later, R.E.K.'s mother also spoke with police and relayed a concern for R.E.K.'s safety.

¶3 R.E.K. failed to respond to multiple attempts by her mother, J.S.C., and the police to reach her by phone call or text. The police eventually discovered R.E.K.'s car parked outside of Netzer's apartment and the police knocked on the door of the apartment. When Netzer answered the door, some officers removed him from the apartment while other officers entered the apartment to look for R.E.K. and also conduct a protective sweep to identify any other persons who might be present and any potential threats.

---

[1] This matter involves the victims of a crime. WISCONSIN STAT. RULE 809.86(4) (2017-18) requires parties to identify crime victims "by one or more initials or other appropriate pseudonym or designation." Consistent with that rule, this court will also refer to the victims in this matter by their initials.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4 Officer Landon Kramer was one of the officers who performed the protective sweep. Upon entering the apartment, Kramer immediately proceeded past the living room, down a hall, and into a bedroom without noticing anyone. In a walk-in closet of the bedroom, Kramer observed the butt of a gun at about eye level on the edge of a shelf. Kramer was not aware while conducting the sweep whether R.E.K. had been located. Kramer reported seeing the gun to his shift commander, Lieutenant Jody Geurink, who subsequently directed another officer to collect the weapon without obtaining a warrant.

¶5 Meanwhile, while Kramer had been searching the bedroom and closet, R.E.K. came from somewhere in the back of the apartment and approached the officers who were detaining Netzer. Geurink described R.E.K. as "upset" and the situation as "chaotic" for a few moments. Geurink separated R.E.K. from Netzer without speaking to her so that the police could finish their sweep, to make sure there was no one else in the apartment and that it was safe to continue the investigation.

¶6 The State charged Netzer with several offenses arising from the incident and Netzer moved to suppress the gun evidence. The circuit court determined that police had entered the apartment pursuant to a valid exercise of their community caretaker function and that they had discovered the gun in plain view during a permissible protective sweep. After the court denied Netzer's suppression motion, Netzer negotiated a plea agreement with the State. He now appeals, seeking review of the suppression ruling. *See* WIS. STAT. § 971.31(10) (preserving the right to appeal a suppression ruling after a plea).

## STANDARD OF REVIEW

¶7      When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. However, we will independently determine whether the facts found by the court satisfy applicable constitutional provisions. *Id.*

## DISCUSSION

¶8      The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect the right to be free from unreasonable searches.[2] *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. A warrantless search is per se unreasonable unless it falls within a clearly delineated exception. *State v. Artic*, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430.

¶9      One such exception to the warrant requirement occurs when the police are serving as community caretakers. *State v. Ultsch*, 2011 WI App 17, ¶10, 331 Wis. 2d 242, 793 N.W.2d 505. In determining whether a search or seizure is justified under the community caretaker exception, a court must consider both whether the challenged police conduct qualifies as bona fide community caretaker activity and also whether the public interest outweighs the intrusion upon the privacy of the individual under the circumstances of the case. *Id.*, ¶13. Bona fide community caretaker activity requires an objectively reasonable basis to believe

---

[2] Due to the similarity of article I, section 11 of the Wisconsin Constitution to the Fourth Amendment of the United States Constitution, Wisconsin courts look to the Supreme Court's interpretation of the Fourth Amendment for guidance in construing the state constitution. *State v. Roberts*, 196 Wis. 2d 445, 452-53, 538 N.W.2d 825 (Ct. App. 1995).

there is a member of the public in need of assistance. *Id.*, ¶15. The balancing test requires an objective analysis of the reasonableness of the police conduct in light of such factors as the urgency of the situation facing the officer and the availability of less intrusive alternatives. *Id.*, ¶¶25-28.

¶10 When police lawfully enter a residence in the performance of their community caretaker function, they may also conduct a protective sweep when they reasonably believe—based on specific and articulable facts, given the totality of the circumstances—that a search is necessary to assure the safety of officers or others. *State v. Maddix*, 2013 WI App 64, ¶15, 348 Wis. 2d 179, 831 N.W.2d 778. A protective sweep must be limited to a cursory inspection of those places where a person posing a danger might reasonably be located. *State v. Sanders*, 2008 WI 85, ¶33, 311 Wis. 2d 257, 752 N.W.2d 713.

¶11 Netzer does not dispute that police were engaged in bona fide community caretaker activity when they arrived at his door or that the public interest warranted the initial warrantless entry into his apartment to search for R.E.K. Netzer also concedes that the gun was in plain view in the closet.

12 Netzer contends, first, that any valid community caretaker function ended the moment R.E.K. made contact with the police and they were able to observe that she appeared uninjured. From that premise, he argues that it was unreasonable for the police to continue searching his apartment and to discover the gun. Second, Netzer contends that the search of the closet exceeded the permissible scope of a protective sweep incident to arrest because the police had no reason to believe there was anyone else present in the apartment who would present a danger.

¶13 Netzer's contention that the community caretaker activity had ended before the gun was discovered is flawed in multiple respects. First, Kramer testified

5

that he began his protective sweep and was already in the bedroom *before* R.E.K. appeared and made contact with the police. Geurink similarly testified that the protective sweep was already underway when R.E.K. came out from the back of the apartment. Given that the events were occurring contemporaneously, there is no way to conclusively determine whether Kramer had already seen the gun by the time Geurink or other officers observed that R.E.K. appeared uninjured. Even if Kramer had not yet seen the gun by that point, Geurink's description of a chaotic situation suggests that there would not have been time for anyone to tell Kramer to discontinue the sweep before it had been completed. Moreover, there is no indication in the record that R.E.K. immediately identified herself or that any of the officers on scene recognized her, and the record indicates that the police did not speak with R.E.K. until after the protective sweep had been completed. In sum, the community caretaker function was ongoing until the police had verified R.E.K.'s identity and well-being, and there is no factual basis to conclude that had occurred before the gun was discovered.

¶14 Because we conclude that the gun was discovered during a protective sweep while the police were engaged in community caretaking, we need not address Netzer's argument that the protective sweep was outside the scope of a search incident to arrest, or the State's alternate arguments that the search was justified by exigent circumstances or the emergency doctrine.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.